IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

EMILY PARKER AND SHEA RUSHING                                    PLAINTIFFS

VS.                                                            No. 1:04CV313-D-D

RICK QUINN, d/b/a THE PRESCRIPTION SHOPPE AND
GREG QUINN d/b/a B & R PHARMACY                                  DEFENDANTS

OPINION GRANTING MOTION FOR SUMMARY JUDGMENT

Presently pending before the Court are the Defendants' separate motions for summary judgment. The Court will treat these motions as a joint motion for summary judgment. Upon due consideration, the Court finds that the motions shall be granted.

*A. Factual Background*

The Plaintiffs filed this action on October 6, 2004, seeking damages for civil rights violations and a host of state law torts. The Plaintiffs sued under Section 1983 claiming that the private defendants conspired with a state narcotics agent to deprive the Plaintiffs of their Fourth Amendment rights. In addition, Plaintiffs claim that the Defendants violated privacy regulations under the Health Insurance Portability and Accountability Act ("HIPAA"). The Plaintiffs also claim damages for defamation and common law invasion of privacy. Finally, the Plaintiffs claim that the Defendants are liable under respondeat superior for the illegal actions of their employee, or in the alternative, that the Defendants negligently failed to supervise their employee. This suit arises from an investigation into fraudulent prescriptions and taking of controlled substances under false pretenses through the Defendants' pharmacies.

Defendant Rick Quinn is a pharmacist by trade and owns both the Prescription Shoppe and

Medical Plaza Pharmacy in Corinth, Mississippi. Andy Null is also a pharmacist and manages the stores for Rick Quinn. Rick Quinn employed a pharmacist named Jeni Bobo at the Prescription Shoppe.

In May or June 2004, the Prescription Shoppe received two anonymous telephone calls indicating that a pharmacist was writing fraudulent prescriptions in Alcorn County, Mississippi. Prompted by these phone calls, Andy Null and Rick Quinn began an internal investigation into the amount of controlled substances at The Prescription Shoppe. Null and Quinn discovered that some of the pharmacy's controlled substances were indeed missing. Upon that discovery, Null contacted the State Board of Pharmacy to help with the investigation. Andy Null discovered that some of the prescriptions for controlled substances, some of which were in the Plaintiffs' names, were listed as being called in by various physicians or physicians. Null promptly contacted those offices to determine if those call-ins were valid. Null was informed that some of those prescriptions were never called in and were thus, fraudulent. Null discovered that all of these prescriptions were filled by pharmacist Jeni Bobo.

Around the same time, Defendant Jeff Palmer, a narcotics agent with the State of Mississippi, began investigating Jeni Bobo's involvement with a known drug user. During his investigation, Agent Palmer linked Jeni Bobo to other fraudulent prescriptions. Palmer obtained a confession from Bobo that she falsified prescriptions. Bobo was terminated from the Prescription Shoppe based upon that data.

In June 2004, Andy Null contacted Agent Palmer about the fraudulent prescriptions he had discovered through the investigation conducted by himself and the Mississippi State Board of Pharmacy. Although Jeni Bobo had been terminated, Agent Palmer requested and received copies of the fraudulent prescriptions on June 11, 2004. Palmer was still in the process of investigating the

events surrounding the fraudulent prescriptions. At the time, he did not possess a warrant or written authorization from the Plaintiffs to obtain those prescriptions. However, Agent Palmer believed that a crime had been committed on the premises of the Prescription Shoppe. In addition, Agent Palmer relied on Andy Null's belief that criminal activity had occurred at the Prescription Shoppe.

Agent Palmer's investigation led him to the doctors' offices indicated on the fraudulent prescriptions. He interviewed the doctors, showed them the pharmacy profiles and fraudulent prescriptions, and presented them with a Sworn Statement of Physician. Palmer testified that he does not recall informing any of the doctors that either Plaintiff was involved in illegal or criminal activity. Agent Palmer also interviewed the Plaintiffs on June 21, 2004. At no time during these interviews, did Palmer tell the Plaintiffs he believed them to be involved in criminal activity.

A crime did occur on the premises of The Prescription Shoppe. Jeni Bobo engaged in the forgery of prescriptions which, according to their guilty pleas, she then gave or sold to Shane Parker for sale in Tennessee. Jeni Bobo pled guilty to uttering forged prescriptions, conspiracy to distribute controlled substances, and embezzlement on November 16, 2004. Shane Parker, husband to Emily Parker and brother to Shea Rushing, pled guilty to uttering forged prescriptions and conspiracy to distribute controlled substances on March 22, 2005. Both Bobo and Parker have been sentenced.

The Plaintiffs alleged in their complaint that their prescription records were provided to Agent Palmer in violation of the Fourth Amendment because he did not have a warrant. In addition, the Plaintiffs claim that this was a HIPAA violation. The Plaintiffs claim that they were falsely implicated in a drug scam which caused them harm to their reputation and also emotional distress. In addition, the Plaintiffs claim they were unable to obtain legitimate medications due to the implications of this drug scam.

The Defendants now move this Court to enter summary judgment on all of Plaintiffs claims.

The Defendants assert that HIPAA creates no private right of action and that disclosure of such information is permitted to law enforcement when there is a good faith belief that criminal activity occurred. The Defendants state the Plaintiffs' Section 1983 and Fourth Amendment claims are meritless because there was no civil conspiracy by private actors to violate the Plaintiff's constitutional rights and that the release of the records did not violate the search and seizure prohibition. In addition, Defendants state that Plaintiffs cannot meet their burden to prove their state law claims of defamation, invasion of privacy, respondeat superior , or negligent supervision. The Plaintiffs concede that summary judgment should be granted on all claims except their Fourth Amendment Claims and their invasion of privacy claims. The Court now turns to those claims.

*B. Standard of Review*

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265, 275 (1986) (the burden on the moving party may be discharged by 'showing...that there is an absence of evidence to support the non-moving party's case"). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trail.'" <u>Celotex Corp.</u>, 477 U.S. at 324, 106 S. Ct. At 2553, 91 L. Ed. 2d At 274. That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255, 106 S. Ct 2505, 2513, 91 L. Ed. 2d 202, 216 (1986). Rule 56 (C) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. At 2552, 91 L. Ed. 2d at 273. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 536, 552 (1986).

*C. Discussion*

1. Section 1983

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. To state a claim under Section 1983 the Plaintiff must (1) allege he has been deprived of a right secured by the United States Constitution or the laws of the United States; and (2) demonstrate that the alleged violation was committed by a person acting under color of state law. Cornish v.Correctional Services Corp., 402 F.3d 545, 549 (5th Cir. 2005). The Plaintiffs argue that they were deprived of their Fourth Amendment rights. The language of the Fourth Amendment preserves the long-held belief of privacy: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated..." U.S. Const. amend. IV; see Wilson v. Layne, 526 U.S. 603, 610, 119 S. Ct. 1692, 1697, 143 L. Ed. 2d 818 (1999). The Fourth Amendment to the United States Constitution does not apply to private individuals; thus, it is " wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the government or with the participation or knowledge of any government official." United States v. Runyan, 275 F.3d 449, 457 (5th Cir. 2001) (*citing* United States v. Jacobsen, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656, 80 L. Ed. 2d 85 (1984)). As private individuals, Rick Quinn and Greg Quinn cannot be held liable under Section

1983.

Private individuals acting independently may not be held liable under section 1983 as their acts are not under color of state law; however, otherwise private conduct may be found to be under color of state law so as to subject a private individual to liability under section 1983 if that individual acts pursuant to a conspiracy with state officials or others acting under color of state law. Dennis v. Sparks, 449 U.S. 24, 27-28, 101 S. Ct. 183, 186, 66 L. Ed. 2d 185 (1980); Adickes v. S.H. Kress and Co., 398 U.S. 144, 152, 90 S. Ct. 1598, 1605-06, 26 L. Ed. 2d 142 (1970); United States v. Price, 383 U.S. 787, 794, 86 S. Ct. 1152, 1156-57, 16 L. Ed. 2d 267 (1966); Brinkman v. Johnston, 793 F.2d 111, 112 (5th Cir, 1986); Todd v. City of Natchitoches, Louisiana, 238 F. Supp.2d 793, 803 (W.D. LA. 2002). Thus, Rick Quinn's turning over the prescription records rises to the level of a section 1983 violation only if the Plaintiffs establish that in doing so Quinn was acting in furtherance of a conspiracy with Mississippi Narcotics Agent Palmer. Conspiracy claims under section 1983 require that the plaintiffs relate specific facts, not merely conclusory allegations. Hale v. Harney, 786 F.2d 688, 690 (5th Cir. 1986). The operative facts of the conspiracy must be pled with particularity, not merely suggested by vague assertions. Lynch v. Cannatella, 810 F.2d 1363, 1370 (5th Cir. 1987). A plaintiff may have a claim against a private individual for conspiracy to violate his civil rights under section 1983 if the individual is a "willing participant in a joint action with the state or its agents." Brinkman, 793 F.2d at 112. Thus, the first issue before the court on the Defendants' summary judgment motion is whether the plaintiffs have produced evidence of facts which, if proved, would support a finding of conspiracy. Celotex Corp. v. Catrett, 477 U.S. at 322-23, 106 S. Ct. at 2552-53 (plaintiff must come forward with proof of each element of claim to avoid summary judgment).

A civil conspiracy is defined as "an agreement between two or more persons to participate

in an unlawful act or a lawful act in an unlawful manner." Hobson v. Wilson, 737 F.2d 1, 51 (D.C. Cir. 1984), *cert. denied sub nom.* Brennan v. Hobson, 470 U.S. 1084, 105 S. Ct. 1843, 85 L. Ed. 2d 142 (1985). See King v. Newton County Board of Supervisors, 144 Fed. Appx. 381, 385 (5th Cir. 2005). A plaintiff must show that the defendants agreed to commit an unlawful act. Crowe v. Lucas, 595 F.2d 985, 993 (5th Cir. 1979). However, it is a rarity that direct evidence of an explicit agreement exists; thus, the agreement may be proved by indirect or circumstantial evidence. Mack v. Newton, 737 F.2d 1343, 1350 (5th Cir. 1984). While a court is required to draw inferences favorable to the Plaintiffs, those inferences "must be 'within the range of reasonable probability'." Love v. King, 784 F.2d 708, 711 (5th Cir. 1986) (*quoting* Radiation Dynamics v. Goldmuntz, 464 F.2d 876, 887 (2d Cir. 1972)). "When the necessary inference is so tenuous that it rests merely upon speculation and conjecture, it is the duty of the court to withdraw the case from the jury." Love, 784 F.2d at 711 (*citing* Radiation Dynamics, 464 F.2d at 887).

Sections 164.500 *et. seq.* of Title 45 of the Code of Federal Regulations govern what information may be released under HIPAA. A covered entity under HIPAA is defined as a (1) health plan, (2) a health care provider, or a health care clearing house that transmits health information in electronic form in connection with a transaction under this subchapter. 45 C.F.R. § 160.103 (2005). A pharmacy is a health care provider under HIPAA. 45 C.F.R. § 162.920(b) (2005). A covered entity may disclose information of to a law enforcement official for a law enforcement purpose if conditions in paragraphs (f)(1) through (f)(6) are met. 45 C.F.R. § 164.512(f) (2005). A crime on the premises of a health care provider is a valid reason for disclosure. 45 C.F.R. § 164.512(f)(5) (2005). "A covered entity may disclose to a law enforcement official protected health information that the covered entity believes in good faith constitutes evidence of criminal conduct that occurred on the premises of the covered entity." Id.

Upon review, the Court finds that it is undisputed that fraudulent prescriptions were written and filled on the premises of the Prescription Shoppe. In addition, prescriptions were fraudulently written in the names of both Plaintiffs and Shane Parker. Jeni Bobo wrote, conspired and filled these prescriptions on the premises of the Prescription Shoppe. Bobo has pled guilty to those crimes. In addition, both Agent Palmer and Andy Null believed a crime had been committed on the premises of the Prescription Shoppe. Therefore, the Court finds that the Defendants' release of the prescription information to Agent Palmer was in the good faith belief that a crime had occurred on the premises. Thus, the release of the information was not unlawful or for an unlawful purpose. In addition, the Plaintiff has not produced a shred of evidence that any type of conspiracy occurred between the Defendants and Agent Palmer. The Plaintiffs' allegation of a conspiracy amounts to nothing more than speculation and conjecture. Therefore, the Court finds that the Plaintiffs' section 1983 claims are wholly without merit. There are no genuine issues of material fact on the section 1983 claims and the Defendants are entitled to judgment as a matter of law.

2. Invasion of Privacy

This Mississippi Supreme Court recognized the tort of invasion of privacy in Deaton v. Delta Democrat Publishing Co., 326 So. 2d 471, 473 (Miss. 1976). The tort of invasion of privacy is comprised of four distinct and separate sub-torts which are as follows:

> (1) The intentional intrusion upon the solitude or seclusion of another;
> (2) the appropriation of another's identity for an unpermitted use;
> (3) the public disclosure of private facts; and
> (4) holding another to the public eye in a false light.

Candlebat v. Flanagan, 487 So. 2d 207, 209 (Miss. 1986). Candlebat is the only case that the Mississippi Supreme Court dealt with the sub-tort of intentional intrusion upon the solitude or seclusion of another. In order to recover under that theory, the plaintiff must meet a heavy burden

of showing a substantial interference with his seclusion of a kind that " 'would be highly offensive to the ordinary, reasonable man, as the result of conduct to which the reasonable man would strongly object.' " Id. (*quoting* Restatement Second of Torts, § 652B, comt. d (1977). The Plaintiff must show some bad faith or utterly reckless prying to recover on an invasion of privacy action. Id. at 209 (*citing* Wilson v. Retail Credit Co., 325 F. Supp. 460, 467 (S.D. Miss. 1971), *aff'd*, 457 F.2d 1406 (5th Cir. 1972). However, there is no requirement to prove communication to a third party in cases of intrusion upon a plaintiff's seclusion or solitude. Plaxico v. Michael, 735 So. 2d 1036, 1039 (Miss. 1999).

The Court finds that Plaintiffs' claims of invasion of privacy are totally without merit. The Plaintiffs have not proved each element of invasion of privacy. In addition, the Court finds that the Defendants' actions were not strongly objectionable. The Defendants turned over fraudulent prescriptions on the good faith belief that a crime had been perpetrated on their business premises. The Plaintiffs failed to show any bad faith or reckless behavior. Therefore, the Court finds that Plaintiffs' claims are without merit and Defendants are entitled to judgment as a matter of law.

### *D. Conclusion*

Upon due consideration of the facts and the law, the Court finds that Plaintiffs Section 1983 claims and invasion of privacy claims do not present genuine issues of material fact. Thus, the Court finds that the Defendants are entitled to judgment as a matter of law on all of Plaintiffs' claims.

A separate order in accordance with this opinion shall issue this day.

This the 10th day of April 2006.

/s/ Glen H. Davidson
Chief Judge